UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACOB VALDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | SA-23-CV-00921-XR |
| v. | § | |
| | § | |
| SAPD OFFICER JOHN AREVALO, | § | |
| Badge #0221; MEDICAL INTAKE NURSE, | § | |
| Magistrate Booking; and MEDICAL | § | |
| INTAKE SUPERVISOR, Magistrate | § | |
| Booking, | § | |
| | § | |
| Defendants. | § | |

ORDER

Before the Court are *pro se* Plaintiff Jacob Valdez's 42 U.S.C. § 1983 Amended Civil

Rights Complaint and response to the Court's Order for More Definite Statement, Bexar County

Hospital District d/b/a University Health's ("University Health") "Rule 12(b)(6) Motion to

Dismiss for Failure to State a Claim, or in the Alternative Motion for Summary Judgment",[1] and

Defendant San Antonio Police Department Officer John Arevalo's Motion for Summary Judgment

and Supplemental Motion for Summary Judgment. (ECF Nos. 6, 8, 13, 23, 27). Upon review,

Defendants' motions for summary judgment are **GRANTED**. (ECF Nos. 13, 23, 27).

PROCEDURAL BACKGROUND

In his original Complaint, Valdez brought § 1983 claims against numerous defendants;

however, because his claims were deficient, the Court ordered Valdez to file an amended complaint

---

[1] University Health provides health care services to inmates at the Bexar County Adult Detention Center ("BCADC"), employing medical providers who provide inmate care as part of the division of Detention Health Care Services. (ECF No. 13). The motion filed by University Health is filed on behalf of Defendants Medical Intake Nurse, Magistrate Booking, and Medical Intake Supervisor, Magistrate Booking. (*Id.*).

correcting the deficiencies.[2] (ECF Nos. 1, 4). In response, Valdez filed his Amended Complaint, which is the live pleading in this matter. (ECF No. 6). After reviewing the Amended Complaint, the Court could not determine the identity of the defendants for service of process or the exact nature of the claims. (ECF No. 7). Therefore, the Court rendered an Order for More Definite Statement, requiring Valdez to: (1) identify defendants by name or by information such as physical description, gender, rank, and date and time of encounter; and (2) state the acts or omission committed by each defendant. (*Id.*). Based on Valdez's response, as well as the Court's familiarity with University Health and its role as a health care provider to inmates in the BCADC, the Court ordered service on the defendants identified as "Medical Intake Nurse" and "Medical Intake Supervisor" through University Health. (ECF Nos. 8, 9). The Court also ordered service on the defendant identified as "SAPD Arresting Transporting Officer in Case No. 703781/2023-CR-066" through the San Antonio Police Department. (ECF Nos. 8, 9).

Following service, University Health, on behalf of the defendants identified as "Medical Intake Nurse" and "Medical Intake Supervisor," filed a "Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or in the Alternative Motion for Summary Judgment." (ECF No. 13). The City of San Antonio filed two advisories identifying the defendant described as "SAPD Arresting Transporting Officer in Case No. 703781/2023-CR-066" as SAPD Officer John Arevalo. (ECF Nos. 15, 16). In response, the Court rendered an amended service order on Officer Arevalo. (ECF No. 17). Thereafter, Officer Arevalo filed a motion to dismiss, which the Court converted to a motion for summary judgment. (ECF Nos. 23, 24). Following the conversion order, Officer

---

[2] When he filed this action Valdez was confined in the BCADC following his robbery conviction, awaiting transfer to a treatment facility as part of the conditions of probation imposed by the state trial court. (ECF No. 1); *see* Register of Actions - DC2023CR0663 (tylertech.cloud) (last visited Aug. 12, 2024). According to Valdez's latest address change notice, he has been released. (ECF No. 30).

2

Arevalo filed a supplement to the motion for summary judgment, which the Court docketed as a Supplemental Motion for Summary Judgment.[3] (ECF No. 27). Although advised of his right to file a response to the dispositive motions and the applicable burden associated therewith, Valdez did not respond to either motion. (ECF No. 24).

Considering the Amended Complaint and Valdez's response to the Order for More Definite Statement, the Court construes Valdez's claims against defendants "Medical Intake Nurse" and "Medical Intake Supervisor," hereafter referred to as "the Medical Defendants," as alleging deliberate indifference to serious medical needs under the Fourteenth Amendment, and his claim against Officer Arevalo as one for excessive force under the Fourth Amendment. (ECF Nos. 6, 8).

## STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[3] For convenience, the Court will refer to the converted motion for summary judgment and the supplemental motion for summary judgment as a single motion for summary judgment. (ECF Nos. 23, 27).

3

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

When, as here, a defendant properly asserts qualified immunity, the burden shifts to the plaintiff to demonstrate the defendant is not entitled to immunity by showing a violation of an actual constitutional right that was clearly established at the time of the alleged violation. *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018); *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmoving party." *Darden*, 880 F.3d at 727 (alteration marks omitted).

In examining video evidence, the Fifth Circuit has stated it "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S.

4

372, 381 (2007) (holding that court not rely on plaintiff's description of facts where record discredits such description but should instead consider "the facts in the light depicted by the videotape.")); *see also Waddleton v. Rodriguez*, 750 F. App'x 248, 254 (5th Cir. 2018) (stating that "[t]his court will not adopt facts that are clearly contradicted by the video such as Waddleton's denial that he acted belligerently or resisted the officers.").

Whether qualified immunity is at issue or not, the Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The nonmovant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)). Moreover, when the opposing parties tell different stories and one is "blatantly contradicted by the record" such that "no reasonable jury could believe it," the reviewing court may not adopt the contradicted version of the facts for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

### A.  Medical Defendants' Motion to Dismiss/Motion for Summary Judgment

Valdez alleges that during his March 4, 2023 arrest he suffered an injury to his shoulder and "lacerations" to his knees and wrist. (ECF Nos. 6, 8). After his arrest he was taken to booking where he claims the Medical Defendants "refused to treat" him and "failed to provide needed medical assistance." (ECF Nos. 6, 8). Valdez claims the Medical Defendants' inaction constituted deliberate indifference to his serious medical needs. (ECF No. 8). In response to Valdez's

allegations, the Medical Defendants filed a Rule 12(b)(6) motion to dismiss or alternatively, a motion for summary judgment. (ECF No. 13). The Court shall address the Medical Defendants' request for judgment based on their motion for summary judgment. *See* FED. R. CIV. P. 56(a). The Medical Defendants contend they are entitled to judgment as a matter of law based on: (1) qualified immunity because Valdez has failed to allege sufficient facts to make out a violation of a constitutional right; and (2) Valdez's failure to exhaust his administrative remedies prior to filing suit. (ECF No. 13).

1. *Qualified Immunity—Failure to Make Out Constitutional Violation*

a. **Substantive Law**

Regarding a pretrial detainee's claim of constitutionally infirm medical treatment, an official violates the Fourteenth Amendment when he or she acts with deliberate indifference to an inmate's serious medical needs. *See Cruz v. Cervantez*, 96 F.4th 806, 813 n.7 (5th Cir. 2024) (recognizing that pretrial detainee's deliberate indifference claim arises under Due Process Clause of Fourteenth Amendment rather than Eighth Amendment) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639–43 (5th Cir. 1996) (en banc)); *Tiede v. Salazar*, 518 F. Supp.3d 955, 970 (W.D. Tex. 2021). "Deliberate indifference is an extremely high standard to meet." *Cruz*, 96 F.4th at 813; *see Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (discussing deliberate indifference to medical needs in context of Eighth Amendment). "[F]acts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (emphasis in original). The deliberate indifference standard is only met where the prison official (1) knows the inmate faces a substantial risk of serious bodily harm, and (2) disregards the risk by failing to take reasonable

6

measures to abate it. *Cruz*, 96 F.4th at 813 (citing *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019)). Thus, the deliberate indifference standard is based on actual knowledge, not what the prison official allegedly should have known. *Hare*, 74 F.3d at 650. In other words, the defendant must have subjectively intended the harm to occur. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 460 (5th Cir. 2001). Because of the knowledge requirement, an inadvertent failure to provide medical care is insufficient to state a claim, i.e., allegations of mere negligence or medical malpractice do not state an actionable § 1983 claim. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

### b. Qualified Immunity

Qualified immunity shields government officials from liability as long as the conduct in questions does not violate clearly established constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2018) (quoting *Harlow*, 457 U.S. at 806). When resolving questions of qualified immunity, a reviewing court "engage[s] in a two–pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam); *Cruz*, 96 F.4th at 813. Under the first prong, the Court must determine whether the facts alleged by the plaintiff "make out a violation of a constitutional right." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 202 U.S. 23 (2018) (quoting

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the right in question was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Bush*, 513 F.3d at 500.

As set out above, a defendant's assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. *Escobar*, 895 F.3d at 393; *Romero*, 888 F.3d at 176. The plaintiff "must rebut the defense by establishing a genuine fact dispute as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation and alteration marks omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017).

### c.  Application of Standard of Review and Substantive Law

As previously stated, the Medical Defendants contend they are entitled to summary judgment based on qualified immunity because Valdez cannot show a violation of his civil rights based on deliberate indifference to serious medical needs. (ECF No. 13). Because the Medical Defendants asserted qualified immunity, the burden is on Valdez, *see Brewer*, 860 F.3d at 824, to show a violation of his constitutional rights by producing evidence establishing a "wanton disregard" to serious medical needs that the Medical Defendants were subjectively aware of. *See Cruz*, 96 F.4th at 813; *Tiede*, 518 F. Supp.3d at 970. The Court finds Valdez fails to carry his burden.

Valdez offers only cursory allegations regarding his claim of deliberate indifference by the Medical Defendants. (ECF Nos. 6, 8). He does so despite the Court's warning in its Order for More Definite Statement. (ECF No. 8). Therein, the Court specifically advised Valdez that the allegations in his Amended Complaint that the Medical Defendants "refused to treat" him or "acknowledge his cries for help"—the only references to his deliberate indifference claim—were conclusory and insufficient to state a viable claim under § 1983. (ECF No. 7). Valdez was further advised to provide sufficient underlying factual allegations for his claim. (*Id.*). Nevertheless, in his response to the Order for More Definite Statement, Valdez states only that the Medical Defendants exhibited "deliberate indifference to medical [needs]," "refused to treat me," provided "no evaluation," and "failed to provide needed medical assistance." (ECF No. 8). As for his injuries, he alleges an injury to his shoulder—variously described as either a pinched nerve or dislocation—and lacerations to his knees and writs. (ECF Nos. 6, 8).

The Court finds Valdez's conclusory allegations do not include facts to support an assertion that the Medical Defendants actually knew of an excessive risk to Valdez's health or safety and subjectively intended him harm. *See Cruz*, 96 F.4th at 813; *Thompson*, 245 F.3d at 460. At best, his allegations suggest the Medical Defendants should have known of an excessive risk, which is insufficient to support a deliberate indifference claim *See Hare*, 74 F.3d at 650. Given the absence of any "knowledge" allegations, Valdez has alleged nothing more than an inadvertent failure to provide medical care or mistaken judgment, i.e., negligence, which is insufficient to state an actionable § 1983 claim. *See Varnado*, 920 F.2d at 321. In sum, the Court agrees there are no allegations the Medical Defendants knew of and disregarded an excessive risk to Valdez's health or safety, i.e., that the Medical Defendants were aware of facts from which they could infer, and

did in fact infer, that a substantial risk of serious harm existed based on Valdez's alleged injuries. *See Cruz*, 96 F.4th at 813; *Thompson*, 245 F.3d at 460.

Moreover, Valdez seems to admit that any refusal by the Medical Defendants to provide treatment was based on actions by an unidentified SAPD officer (not alleged to be arresting Officer Arevalo named by Valdez as a defendant) and an unidentified lieutenant, telling the Medical Defendants not to provide treatment. (ECF No. 8). This further negates any claim the Medical Defendants "evinced a wanton disregard" to Valdez's serious medical needs. *See Domino*, 239 F.3d at 756; *Tiede*, 518 F. Supp.3d at 970. Additionally, Valdez admits that after he was taken to the BCADC South Tower, he received medical care, though not the care he apparently desired. (ECF No. 8). The Court finds this allegation establishes that at most Valdez suffered a delay in medical treatment, which is insufficient to support a claim for deliberate indifference absent exception circumstances. (ECF No. 8); *see Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding that absent exceptional circumstances, disagreement with medical treatment insufficient to support claim for deliberate indifference).

Because Valdez failed to include any fact–based assertions in either his Amended Complaint or response to the Order for More Definite Statement, alleging only overbroad and sweeping generalizations, the Court finds he has failed to sustain his burden under the first prong of the qualified immunity inquiry to make out a violation of his civil rights based on deliberate indifference to his serious medical needs. *See Darden*, 880 F.3d at 727. Valdez fails to allege, much less establish, that the Medical Defendants were aware of any serious medical need and wantonly disregarded it, thereby entitling the Medical Defendants to summary judgment based on the defense of qualified immunity.

2. _Failure to Exhaust Administrative Remedies_

    **a.  Substantive Law**

In addition to claiming entitlement to summary judgment based on qualified immunity, the Medical Defendants contend they are entitled to judgment as a matter of law based on Valdez's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 13); _see_ 28 U.S.C. § 1997e(a). The PLRA was enacted to reduce the number of prisoner suits by weeding out unmeritorious claim. _Jones v. Bock_, 549 U.S. 199, 202–04 (2007); _Woodford v. Ngo_, 548 U.S. 81, 84 (2006); _see_ 42 U.S.C. § 1997e(a). One of the ways the PLRA seeks to accomplish this goal is through a robust exhaustion requirement that mandates inmates exhaust prison grievance procedures prior to filing a lawsuit. _Jones_, 549 U.S. at 202, 204; _Woodford_, 548 U.S. at 84–85. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution before an agency because it is faster and more economical than litigation in federal court. _Woodford_, 548 U.S. at 89 (citations omitted). Although mandated by the PLRA, exhaustion is not defined by the statute; rather, it is defined by the particular correctional facility's grievance procedures, and courts may not add or subtract from them. _Cantwell v. Sterling_, 788 F.3d 507, 509 (5th Cir. 2015); _see Jones_, 549 U.S. at 206.

The exhaustion requirement is mandatory and requires "proper exhaustion," meaning an inmate must fully complete the grievance process in accordance with the particular facility's rules, including deadlines, as a prerequisite to bring suit in federal court. *Woodford*, 548 U.S. at 90. Consequently, unexhausted claims cannot be filed in federal court and if they are, they are subject to dismissal. *See Jones*, 549 U.S. at 204. Exhaustion is required even if damages are unavailable through the facility's grievance program. *Booth v. Churner*, 532 U.S. 731, 734 (2001).

The Fifth Circuit takes a strict approach to exhaustion. *Id.* at 268. Exhaustion must be completed before suit; failure to exhaust may not be excused if it occurs while the suit is pending. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Substantial compliance is insufficient; prisoners must properly exhaust all available remedies by, among other things, complying with deadlines and procedural rules. *See Dillon*, 596 F.3d at 268.

Exhaustion is not jurisdictional, but rather an affirmative defense on which the defendant bears the burden of proof. *Jones*, 549 U.S. at 216. Thus, when moving for summary judgment, a defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in its favor." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

### b. Application of Standard of Review and Substantive Law

In support of their motion for summary judgment based on Valdez's failure to exhaust, the Medical Defendants submitted the following documentary evidence, which was authenticated by an affidavit executed by Sergeant Rose De Los Santos, the Grievance Sergeant and Custodian of Records for Inmate Grievances for the Bexar County Sheriff's Office ("BCSO"): (1) excerpts from the BCSO Inmate Handbook ("the Handbook"); and (2) the entirety of Valdez's grievance

records from the BCADC. (ECF No. 13, Exhs. 1, 2). The Court finds the summary judgment evidence propounded by the Medical Defendants establishes as a matter of law that Valdez failed to exhaust his administrative remedies.

The Handbook states grievances must be filed within seventy–two (72) hours of the incident forming the basis of the grievance. (*Id.*, Exh. 2, p. 4). Thereafter, an inmate has seventy–two (72) hours from receipt of an adverse finding to appeal the decision to the Jail Administrator. (*Id.*). An appeal should be filed whenever an inmate receives a grievance response and is "not satisfied" with the answer. (*Id.*). Thus, prior to filing his § 1983 claims against the Medical Defendants, Valdez was required to file a grievance within seventy–two (72) hours of the incident forming the basis of the grievance and, in the event of an unsatisfactory response, an appeal within seventy–two (72) hours of the response. (*Id.*); *see* 42 U.S.C. § 1997e(a).

Valdez's grievance records show he filed a grievance on May 28, 2023, complaining about smells coming from the walls. (ECF No. 13, Exh. 1, p. 1). This grievance is inapplicable to Valdez's claims against the Medical Defendants. (ECF Nos. 6, 8). He then filed two grievances in August 2023, in which he complains about the events that occurred the night of his arrest—the alleged excessive force and denial of medical care. (ECF No. 13, Exh. 1, pp. 1–2). However, these grievances are untimely. By Valdez's own admission, the events underlying his § 1983 claims against the Medical Defendants occurred on March 4, 2023. (ECF No. 8). Thus, any grievance based on these events had to be filed, per the Handbook, no later than March 7, 2023—within seventy–two (72) hours of the incident forming the basis of the grievance. (ECF No. 13, Exh. 2, p. 4). Valdez did not file any grievance relating to this matter for more than five months after the event, clearly not within the mandatory seventy–two (72) hour window.

13

(*Id.*, Exh. 1, pp. 1–2). Moreover, Valdez received adverse responses to each grievance the day after they were filed. (*Id.*). However, the summary judgment evidence shows Valdez did not file the required appeal to the Jail Administrator for either unsatisfactory response. (*Id.*). Thus, the summary judgment evidence produced by the Medical Defendants establishes as a matter of law that Valdez failed to properly exhaust his administrative remedies because (1) his grievances were untimely, and (2) he failed to initiate the required appeals from the adverse responses to his grievances. (*Id.*, Exhs. 1, 2); *see Woodford*, 548 U.S. at 90.

Because the Medical Defendants established entitled to judgment as a matter of law based on Valdez's failure to properly exhaust his administrative remedies, the burden shifted to Valdez to raise a fact issue on exhaustion. *See Giles*, 245 F.3d at 493. Valdez, however, failed to provide any evidence with respect to exhaustion other than responding "yes" to the question on the § 1983 form inquiring about exhaustion. (ECF No. 6). Valdez did not attach a copy of the "final step" of the grievance procedure as mandated by the form. The Court finds that checking the "yes" box without provision of actual evidence showing exhaustion is insufficient to raise a fact issue in light of the Medical Defendants' authenticated evidence showing an absence of exhaustion. Accordingly, the Court finds the Medical Defendants are also entitled to summary judgment based on Valdez's failure to exhaust his administrative remedies. *See* 28 U.S.C. § 1997e(a).

### B. Officer Arevalo's Motion for Summary Judgment

Valdez alleges Officer Arevalo used excessive during his March 4, 2023 arrest, causing injury to his shoulder, knees, and wrists.[4] (ECF Nos. 6, 8). More specifically, Valdez contends the

---

[4] Officer Arevalo suggests that in addition to the excessive force claim Valdez also brought a claim of deliberate indifference to serious medical needs against him. (ECF Nos. 23, 27). The Court, even under a liberal construction, does not interpret Valdez's allegations to include a claim of deliberate indifference to serious medical needs as to Officer Arevalo. (ECF Nos. 6, 8); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Rather, the Court construes Valdez's

officer "lifted [his] restrained & handcuffed arms well above my head for no apparent reason and shoved me to the ground[.]" (ECF No. 6). Valdez states Officer Arevalo's actions were undertaken for "no apparent reason" and "unwarranted." (*Id.*). In his motion for summary judgment, Officer Arevalo contends he is entitled to judgment as a matter of law based on qualified immunity because Valdez fails to make out a constitutional violation. (ECF Nos. 23, 27).

      *1.  Substantive Law*

When a plaintiff alleges law enforcement officials used excessive force while making an arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. *Tolan*, 572 U.S. at 656. A Fourth Amendment violation occurs when an arrestee "suffers an injury that results directly and only from [the officer's] clearly excessive and objectively unreasonable use of force." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 219, 332 (5th Cir. 2020)). To avoid dismissal when an officer has pled qualified immunity, a plaintiff must establish the existence of a genuine issue of fact as to whether the officer's allegedly wrongful conduct violated the Fourth Amendment. *Darden*, 880 F.3d at 727. Thus, under the first prong of the qualified immunity inquiry, the plaintiff must produce evidence of an injury that resulted directly and only from a use of objectively unreasonable force that was clearly excessive to the need. *Id.*; *Bush*, 513 F.3d at 500–01.

---

claim against Officer Arevalo as solely for excessive force under the Fourth Amendment. To the extent Valdez's pleadings might be construed to include a deliberate indifference claim against the officer, the Court agrees the summary judgment evidence, including Officer Arevalo's affidavit and the body camera video, rebuts the purported allegation—Officer Arevalo asked Valdez if he needed medical services and he refused, never requesting medical care at any time thereafter. (ECF No. 23, Exh. A–1 at 0:13:38–0:49:07; Exh. A–2 at 03:15:10–03:15:25; 27, Exh. B). Moreover, a deliberate indifference claim would be subject to dismissal as failing to make out a constitutional violation under the first prong of the qualified immunity inquiry because it is vague and conclusory as the Court discussed with regard to the same claim against the Medical Defendants. *See, supra*; *Darden*, 880 F.3d at 727.

Excessive force claims are necessarily fact–intensive, and whether the force used is unreasonable or excessive depends on the particular facts and circumstances of the case at hand. *Darden*, 880 F.3d at 728. The Court must consider the totality of the circumstances, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officers' safety or the safety of others; (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; and (4) the relationship between the need for force and the amount of force used. *Id.* at 728–29 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, since the Supreme Court's decision in *Graham*, excessive force cases have also emphasized:

> [T]he speed with which an officer resorts to using force rather than verbal commands and/or negotiations; the amount of time that an officer has to decide the type and amount of force to use; whether the officer responds with "measured and ascending" actions corresponding with the plaintiff's "escalating verbal and physical resistance" or aggression; whether the plaintiff has ignored the officer's prior command(s); whether the plaintiff has a weapon and/or acts in a manner suggesting intended use of a visible—or hidden—weapon; whether the plaintiff moves outside the officer's line of vision; whether the plaintiff acts in an erratic, unexplained manner; and whether the plaintiff moves toward or away from an officer.

*Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *5 (5th Cir. June 10, 2024) (citing *Harmon v. City of Arlington, Tex.,* 16 F.4th 1159, 1164–65 (5th Cir. 2021); *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021); *Batyukova v. Doege*, 994 F.3d 717, 726–29 (5th Cir. 2021); *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 339 (5th Cir. 2020); *Garza v. Briones*, 943 F.3d 740, 746 (5th Cir. 2019); *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017); *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012); *Manis v. Lawson*, 585 F.3d 839, 844–46 (5th Cir. 2009); *Reese*, 926 F.2d 494,

500–01 (5th Cir. 1991)). "In short, 'the information an officer possesses when that officer takes an action impacts [] the objective legal reasonableness of the officer's conduct.'" *Id.* (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 448 (5th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"Importantly, '[a] court must measure the force used under the facts as a reasonable officer would *perceive* them, not necessarily against the historical facts.'" *Id.* at *6 (quoting *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (emphasis in original) (citing *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 234 (5th Cir. 2009)). In other words, an officer's actions are viewed from "the perspective of a reasonable officer on the scene, rather than … the 20/20 vision of hindsight." *Darden*, 880 F.3d at 729 (quoting *Graham*, 490 U.S. at 395). And, as always, the Court must be mindful that, "the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

"Likewise, '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Singleton*, 2024 WL 2891900, at *6 (quoting *Graham*, 490 U.S. at 396–97). Thus, upon review, a court must be guarded, resisting the urge to second–guess an officer's assessment of the threat he or she faces. *Id.* (quoting *Harmon*, 16 F.4th at 1163 (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam)). As recently reiterated by the Fifth Circuit, "'[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of … officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* (quoting *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Brinegar v. United States*,

338 U.S. 160, 176 (1949)). "Even a mistaken belief can still be a reasonable belief." *Id.* (citing *Wilson v. City of Bastrop*, 26 F.4th 709, 715 (5th Cir. 2022) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Moreover, as stated above, the inquiry into the use of force is an objective one. *Graham*, 490 U.S. at 397. An officer's underlying, subjective intent or motivation is irrelevant. *Id*. "Accordingly, '[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.'" *Singleton*, 2024 WL 2891900, at *6 ( quoting *Graham*, 490 U.S. at 397).

## 2. *Application of Standard of Review and Substantive Law*

As previously stated, Valdez bases his excessive force claim on his assertion that during the course of his arrest, Officer Arevalo shoved him to his knees and lifted his handcuffed arms above his head, injuring his knees, wrists, and shoulder. (ECF Nos. 6, 8). Valdez describes the officer's actions as "unwarranted" and undertaken for "no apparent reason." (ECF No. 6). Valdez claims he suffered an injury to his shoulder, described alternatively as either a pinched nerve or dislocation, and "lacerations" to his wrists and knees. (ECF Nos. 6, 8). Valdez provides no other statements or evidence regarding his excessive force claim.

Because Officer Arevalo has alleged the defense of qualified immunity, the burden is on Valdez to show a violation of an actual constitutional right. *See Escobar*, 895 F.3d at 393; *Romero*, 888 F.3d at 176. And, although the verified allegations in Valdez's Amended Complaint and response to the Order for More Definite Statement are competent summary judgment evidence, they are insufficient to defeat summary judgment if they are nothing more than conclusory

18

allegations or unsubstantiated assertions. *See Little*, 37 F.3d at 1075. But, even when the ordinary summary–judgment standard applies, "the court must measure [the] force used under the facts as a reasonable officer *would perceive them*." *Griggs*, 841 F.3d at 313 (emphasis in original). Thus, the court "first constru[es] disputed historical facts in favor of the non-movant, [and] . . . then ask[s] how a reasonable officer would have perceived those historical facts." *Id*. at 313–14 (quoting *Hill*, 587 F.3d at 234); *see also Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022) (same).

As summary judgment evidence, Officer Arevalo produced his affidavit, his offense/incident report, video from his body camera, and video from the body camera of the other SAPD officer at the scene, Officer Dwight Ivanov.[5] (ECF Nos. 23, Exhs. A–1, A–2; 27, Exhs. B, B–1).

In his affidavit and report, Officer Arevalo, a patrol officer with SAPD since 2019, states that on March 4, 2023, he was dispatched to the scene of an alleged robbery of a bicycle from a female complainant. (ECF No. 27, Exhs. B, B–1).[6] Having been provided "credible" information about the identity and location of the suspect, Officer Arevalo proceeded to the suspect's home, which was nearby. When he reached suspect's home, he saw a man inside the residence standing behind a mesh metal door. The man, who matched the description of the suspect, was Valdez. Officer Ivanov then arrived in his vehicle.

Officer Arevalo states that when they arrived, Valdez was looking out through the mesh door, "yelling in an aggressive manner." The officer "repeatedly asked Valdez to exit his house

---

[5] The body camera videos were authenticated by an affidavit from Linda Flores, the custodian of records for SAPD. (ECF No. 23, Exh. A).

[6] The summary judgment evidence described in the following paragraphs came either from Officer Arevalo's affidavit or his offense/incident report. (ECF No. 27, Exhs. B, B–1).

and speak" to him about the alleged robbery. Officer Arevalo walked through the unlocked front gate of the property; Valdez "instructed" him to leave. The officer again asked Valdez to come out and speak to them, advising Valdez "of the reasoning for [the officers'] presence multiple times." When Valdez finally exited the residence on his own volition, he walked toward the officers. Office Arevalo describes him as "angry and belligerent." Officer Arevalo grabbed Valdez's arm in an effort to detain him because he was "acting in a threatening manner" toward the officers and matched the complainant's description of the robbery suspect.

According to Officer Arevalo, Valdez "actively resisted" the officers' efforts to detain him for questioning, using his body, hands, arms, and legs, and ultimately grabbing onto a chain link fence to prevent the officers from restraining him. After removing Valdez from the fence, the officers used their hands to subdue Valdez and place him on the ground, never punching or kicking him and never using any weapon against him. Valdez continued to resist while on the ground. Officer Arevalo states Valdez appeared to be intoxicated.

After they subdued Valdez and placed him in handcuffs, Officer Arevalo discovered he had an active felony arrest warrant for robbery. When the current robbery complainant declined to press charges, the officer arrested Valdez based on the outstanding warrant. Before transporting Valdez for booking, Officer Arevalo asked him if he needed medical care; Arevalo stated he did not need medical assistance and at no time did he ever advise the officer that he was injured or needed medical care. After leaving Valdez for processing, Officer Arevalo resumed his patrol duties.

As noted above, in addition to the affidavit and offense/incident report, Officer Arevalo proffers as summary judgment evidence video from his body camera and that of the other officer

on scene, Officer Ivanov. (ECF No. 23, Exhs. A–1, A–2). As the interaction with Valdez begins, Officer Arevalos's body camera shows Valdez behind the metal mesh door, and after identifying himself, the officer repeatedly asks Valdez to come outside and speak to him about the robbery. (ECF No. 23, Exhs. A–1 at 0:03:02–0:04:09, A–2 at 0:3:30–:58). While behind the door, Valdez yells at the officers, ordering them off his property and insisting they talk to whoever called them because he did not. (ECF No. 23, Exhs. A–1 at 0:03:19–0:04:07, A–2 at 3:30–:58). As Officer Arevalo continues to ask Valdez to come outside and speak with them, Valdez slams the door open and aggressively walks toward the officers, yelling, "What the f*ck do you want?" and ordering them off of his property. (ECF No. 23, Exhs. A–1 at 0:04:07–:19, A–2 at 0:3:58–0:4:11). Valdez appears angry. (ECF No. 23, Exhs. A–1 at 0:04:19). As he continues to order them off the property, Valdez walks between the officers toward the sidewalk and as he does, Officer Arevalo grabbed his arm. (ECF No. 23, Exhs. A–1 at 0:04:29–:32, A–2 at 0:4:19–:22). Valdez then pulls away from the officer and grabs the chain–link fence with his free hand. (ECF No. 23, Exhs. A–1 at 0:04:30–:34, A–2 at 0:4:22–:29). The officers order Valdez to put his hands behind his back, but he refuses, asking "why?" (ECF No. 23, Exhs. A–1 at 0:04:36–:46, A–2 at 0:04:29–:39). Valdez continues to refuse to place his hands behind his back, pulling away from and struggling with the officers, ordering them off his "private property," and grabbing the fence to avoid detention. (ECF No. 23, Exhs. A–1 at 0:04:41–0:05:10, A–2 at 0:04:29–0:05:03). Valdez continues to resist officers' efforts to detain him for questioning, continually grabbing the fence with his hands—and asking officers if they know he is "on the run"—until Officer Arevalo manages to place him on the ground, using his hands on Valdez's shirt collar. (ECF No. 23, Exhs. A–1 at 0:05:10–:36, A–2 at 0:05:03–:37). Even while on the ground, Valdez struggles physically, hiding his left hand

under his body, seemingly attempting to raise himself off the ground, and then placing his hands in such a way as to prevent being handcuffed. (ECF No. 23, Exhs. A–1 at 0:05:36–0:06:32). Officer Arevalo is finally able to handcuff Valdez with the assistance of Officer Ivanov, and only when fully handcuffed does Valdez momentarily cease struggling and resisting. (*Id.* at 0:06:32–:39).

At this point, the officers rolled Valdez onto his back; Valdez challenged Officer Arevalo "to take him one on one." (*Id.* at 0:06:42–0:06:53). As Valdez continues his verbal barrage, he is asked to stand up but tells the officers to "let go of" him; Valdez has to be lifted to his feet. (ECF No. 23, Exhs. A–1 at 0:07:19–:25, A–2 at 0:06:52–0:07:17). Once on his feet, Valdez continues to resist, loudly asking, "Where's your probable cause?" over and over. (ECF No. 23, Exhs. A–1 at 0:07:30–:46, A–2 at 0:07:17–:26). During this portion of the encounter, Valdez is warned to stop spitting. (ECF No. 23, Exhs. A–1 at 0:07:38–:46, A–2 at 0:07:26–:32). The officers also have to warn Valdez to stop moving and "relax." (ECF No. 23, Exhs. A–1 at 0:08:18, A–2 at 0:08:09). The officers hold Valdez in handcuffs over the hood of one of the patrol vehicles as they radio to obtain information from the alleged victim about the stolen bicycle, which was in Valdez's front yard. (ECF No. 23, Exhs. A–1 at 0:08:46, A–2 at 0:08:56). As Officer Ivanov holds Valdez over the hood, Officer Arevalo uses his patrol vehicle's computer to obtain information on Valdez, ultimately discovering, and informing Valdez, he has an active warrant for robbery for which he will be arrested. (ECF No. 23, Exhs. A–1 at 0:09:28, 0:14:08–:11, A–2 at 0:09:10, 0:13:58–0:14:04). During this time, Valdez states he cut himself on the fence, as did Officer Ivanov. (ECF No. 23, Exh. A–2 at 0:09:10). When he returns from his vehicle, Officer Arevalo asks Valdez if he needs EMS and Valdez states, "I don't need nobody." (ECF No. 23, Exhs. A–1 at 0:13:38–:40, A–2 at 0:13:30–:32).

While Officer Arevalo was on his computer in the patrol vehicle, Officer Ivanov has to continually warn Valdez to "chill out" as he continues to raise up and pull away, cursing at Officer Arevalo. (ECF No. 23, Exh. A–2 at 0:13:15, 0:14:47–0:15:28). Valdez continues to be combative and verbally abusive, cursing at the officers and calling them names. (ECF No. 23, Exhs. A–1 at 0:15:14–0:18:18). A female bystander, who apparently knew Valdez, is seen telling him to calm down as Officer Arevalo explains why Valdez is being detained. (*Id.* at 0:16:16–0:18:18). Officer Arevalo describes Valdez as "very intoxicated" to which the bystanders agree. (*Id.* at 0:18:18). As Officer Arevalo speaks to bystanders, Officer Ivanov continues to warn Valdez to "chill out" as he struggles, telling Valdez he is "being aggressive." (ECF No. 23, Exh. A–2 at 0:16:02–:38). Valdez continually tries to sit down while being told to stand. (*Id.* at 0:16:50–:54, 0:18:08–:13). Officer Ivanov states Valdez is "pushing up" on him. (*Id.* at 0:17:08).

As Officer Arevalo continues to search for information about Valdez on the computer in his patrol vehicle, Officer Ivanov places Valdez in his patrol vehicle. (*Id.* at 0:22:36). He is later removed from Officer Ivanov's vehicle, with the officer asking him if the handcuffs are too tight; Valdez states he is "good" and tells the officer "don't worry about it." (*Id.* at 0:28:32–:36). Ultimately, the officers are advised the alleged robbery victim does not want to press charges. (ECF No. 23, Exhs. A–1 at 0:24:07, A–2 at 0:32:15). However, Valdez is arrested based on the active robbery warrant (as well as resisting detention), placed in Officer Arevalo's vehicle, and transported for booking. (ECF No. 23, Exhs. A–1 at 0:31:53–0:34:25, 0:36:55, A–2 at 0:30:50–0:31:24). Officer Ivanov describes Valdez as having "resisted our efforts to put him in cuffs." (ECF No. 23, Exh. A–2 at 0:32:24–:30). Officer Ivanov is no longer involved once Valdez is transported to booking.

Officer Arevalo's body camera remained active during the transport; Arevalo never requested medical care during transport or at any point thereafter. (*Id.* at 0:34:25–0:49:07). Once they arrived at the booking location, Valdez again became verbally aggressive, calling Officer Arevalo, among other things, "a dumb cop," "the most retarded of all the cops there is," and "retarded a** mother f*cker." (*Id.* at 0:37:42–0:48:03). Valdez threatens to kill Officer Arevalo and "beat [his] a**." (*Id.* at 0:42:40, 0:43:34). As Officer Arevalo exits his vehicle to remove Valdez and take him inside for booking, Valdez asks the officer if he wants Valdez "to beat the f*ck out of [him]" (*Id.* at 0:47:38). Officer Arevalo's body camera shows that after Valdez was removed from the patrol vehicle and the officer begins walking him toward the booking area, the officer removes a strap from around Valdez's neck that was holding a number of keys. (*Id.* at 0:48:28). When the officer takes the keys from him, Valdez stops and attempts to turn toward the officer, complaining about the removal of the keys and resisting the officer's efforts to move him forward. (*Id.* at 0:48:31). In response, Officer Arevalo raised Valdez's handcuffed arms in order to walk him inside. (*Id.* at 0:48:35). This lasted only until Valdez was inside the facility, approximately thirty–two (32) seconds. (*Id.* at 0:48:35–0:49:07). This ended Officer Arevalo's encounter with Valdez. (ECF No. 27, Exh. B).

Reviewing the summary judgment evidence in light of the *Graham* factors, the factors recognized in *Singleton*, and the elements necessary to establish excessive force, the Court finds the summary judgment evidence establishes an absence of excessive force by Officer Arevalo. *See Graham*, 490 U.S. at 396; *Singleton*, 2024 WL 1891900, at *5. Initially, the Court notes the crime under investigation, as well of the offense for which there was an outstanding warrant—robbery—are felonies, i.e., serious offenses. *See* Tex. Penal Code Ann. § 29.02. The

evidence detailed above shows Valdez was combative and uncooperative from the moment officers arrived at his home. Officer Arevalo had to ask him multiple times to come outside. When Valdez finally exited the house, he aggressively walked toward the officers, waiving his arms yelling at them to leave his property. Despite Officer Arevalo's request that Valdez speak to them about the robbery, Valdez attempted to walk between the officers to the street, and when Officer Arevalo attempted to detain him, Valdez pulled away, resisting the officers' attempt to stop him. Valdez grabbed the fence, struggling and refusing orders to stop and place his hands behind his back. Valdez's combative actions forced the officers to place him on the ground, which Officer Arevalo did by grabbing the back of Valdez's shirt and moving him to the ground—neither officer struck Valdez with their hands or any instrument. Contrary to Valdez's assertion, the video does not show Officer Arevalo "shoving" Valdez to his knees. Once on the ground, the video evidence shows Valdez continued to resist and ignore officers' orders to place his hands behind his back, attempting to hold his free hand under his body. It took the efforts of both officers to subdue Valdez. Once handcuffed, Valdez continued to verbally challenge the officers; he refused their orders to stand up, requiring that they lift him to his feet. Officer Ivanov had to warn Valdez multiple times to stop spitting and "chill out." Throughout the encounter Valdez has to be warned to stop moving and relax. As for his injuries, Valdez denies on video needing medical attention or that the handcuffs are too tight. Bystanders and the officers agreed Valdez was intoxicated.

Once at the booking facility, Valdez continues to verbally assault Officer Arevalo, cursing at him and threatening to kill him or "beat his a**." When the officer removes Valdez from the vehicle, Valdez asks if Officer Arevalo wants him "to beat the f*ck out of him." The officer takes no action in response to the taunts. However, when Officer Arevalo removes the keys from around

Valdez's neck, he is forced to respond because Valdez stops and turns toward the officer, resisting attempts to move him toward the facility. It is only at that point that Officer Arevalo raises Valdez's cuffed hands up in an effort to propel him toward the booking facility. This lasted just over thirty (30) seconds, ending when they entered the booking facility.

Valdez does not dispute his combativeness and resistance other than by conclusorily alleging the physical actions taken against him were for "no apparent reason" and "unwarranted." The video evidence, however, contradicts these assertions. Valdez was verbally and physically aggressive, combative, and resistant throughout his encounter with officers. Despite Valdez's actions, the summary judgment evidence shows officers never used force beyond that necessary, giving Valdez multiple opportunities to comply before employing any physical force. The officers' actions, according to the video evidence, were measured, ascending only when necessary and in response to Valdez's actions. Valdez acted erratically throughout the encounter, talking over the officers, refusing to listen to them, and generally acting in an irrational and combative manner.

Based on the evidence, the Court finds Officer Arevalo has established as a matter of law an absence of excessive force and, as to qualified immunity, Valdez has failed to carry his burden to show a Fourth Amendment violation. *See Darden*, 880 F.3d at 727–29. Although there was a physical encounter between Valdez and Officer Arevalo, the Fourth Amendment gives law enforcement officials "'fair leeway for enforcing the law in the community's protection[,]'" *Heien*, 574 U.S. at 60–61 (2014), and "'[n]ot every push or show, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Here, the summary judgment evidence shows Valdez refused multiple orders to speak to officers or produce his hands for cuffing. He physically resisted efforts to detain him. Thus, the evidence

suggests a struggle based on Valdez's resistance, not an unnecessary or unreasonable use of force by Officer Arevalo. As for the "evidence" presented by Valdez to support his claim of excessive force, it consists of nothing more than the conclusory and unsubstantiated allegations in his Amended Complaint and response to the Order for More Definite wherein he states only that he was shoved to his knees and his handcuffed arms lifted up. These types of allegations, though verified, constitute but a scintilla of evidence and are insufficient to defeat summary judgment. *See Little*, 37 F.3d at 1075; *Hunt*, 730 F. App'x at 212. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As in *Scott*, Valdez's claims that Officer Arevalo's actions were for "no apparent reason" and "unwarranted" were "utterly discredited" by the video evidence, compelling this Court to find in favor of the officer. *See id.* at 380–81. Given the evidence, the Court finds a rational factfinder would not find for Valdez on his claim of excessive force, thereby entitling Officer Arevalo to summary judgment. *See Hunt*, 730 F. App'x at 212.

## CONCLUSION

Based on the foregoing analysis, the Court finds the Medical Defendants are entitled to summary judgment as to Valdez's § 1983 claim of deliberate indifference to serious medical needs. The Court further finds Officer Arevalo is entitled to summary judgment as to Valdez's § 1983 claim of excessive force—and to the extent alleged, his § 1983 claim of deliberate indifference to serious medical needs.

**IT THEREFORE ORDERED** that University Health's "Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or in the Alternative Motion for Summary Judgment" filed on behalf of the Medical Defendants (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that Valdez's claims (ECF Nos. 6, 8) against the Medical Defendants are **DISMISSED WITH PREJUDICE** and Valdez shall take nothing in this cause against the Medical Defendants.

**IT IS FURTHER ORDERED** that Officer Arevalo's Motion for Summary Judgment and Supplemental Motion for Summary Judgment (ECF Nos. 23, 27) are **GRANTED**.

**IT IS FURTHER ORDERED** that Valdez's claims (ECF Nos. 6, 8) against Officer Arevalo are **DISMISSED WITH PREJUDICE** and Valdez shall take nothing in this cause against Officer Arevalo.

It is so **ORDERED**.

**SIGNED** this 13th day of August, 2024.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE